## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **PAUL CURIE**<br>869 State Route 46S<br>Jefferson, Ohio 44047<br><br>       Plaintiff,<br><br>  v.<br><br>**HUNTINGTON NATIONAL BANK**<br>c/o Stephen D. Steinour, CEO<br>41 South High Street<br>Columbus, Ohio 43287<br><br>      Defendant. | Case No.:<br><br>Judge:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**JURY DEMAND ENDORSED HEREON** |

Plaintiff Paul Curie, by and through counsel, for his Complaint against Huntington National Bank, states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Paul Curie ("Plaintiff" or "Curie") is the owner of the real property and improvements located at 869 State Route 46, Jefferson, Ohio 44047 (the "Home").

2.      Curie currently maintains the Home as his primary, principal residence and has maintained the Home as such at all times pertinent to the allegations in this Complaint.

3.      Defendant Huntington National Bank ("Huntington") is the servicer of a note (the "Note") and a mortgage on the Home that secured the Note (the "Mortgage") (collectively referred to hereinafter as the "Loan").

4.      Huntington services the Loan on behalf of the owner, the Federal National Mortgage Association, more commonly known as Fannie Mae ("FNMA" or "Fannie Mae").

5.     Jurisdiction of claims against the Defendant is conferred by 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA") and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* ("RESPA"). This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35,1024.36, and 1024.41 of Regulation X.

6.     This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Curie purchased the Home for his primary residence within the District, Defendant does business in this District, the Home is located in this District, and the conduct complained of took place primarily in this District.

## **INTRODUCTION**

8.     In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

9.     Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 ("Regulation X") (February 14, 2013), which became effective on January 10, 2014.

10.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

2

11.     Huntington is subject to the aforesaid regulations and does not qualify for the exemption for "small servicers", as defined in 12 C.F.R. § 1026.41(e)(4).

12.     Huntington is not a "qualified lender", as defined in 12 C.F.R. § 617.700.

13.     Curie asserts a claim for relief against Huntington for breaches of the specific rules under Regulation X as set forth, *infra*.

14.     Curie has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## FACTUAL BACKGROUND

### [The Loan and the prior foreclosure actions]

15.     Curie executed the Loan in favor of Sky Bank, in the amount of $73,500.00, amortized over thirty (30) years, at an interest rate of 7.625% on February 2, 2002. A true and accurate copy of the Loan is attached as *Plaintiff's Exhibit A.*

16.     Between August 27, 2010 and August 31, 2015, three (3) foreclosure actions were filed in the Court of Common Pleas for Ashtabula County, Ohio, assigned Case Nos. 2010-CV-00939, 2012-CV-00533, and 2015-CV-00488, respectively.

17.     In each case, Huntington alleged to be the successor in interest to Sky Bank, and alleged that Curie had defaulted on the terms of the Loan.

18.     Curie alleged that any default was caused by Huntington's own actions in assessing improper fees and in asserting amounts due from Curie which were improper and in excess of the amounts due according to the plain language of the Note and Mortgage.

19.     The second foreclosure action, Case No. 2012-CV-00533, was resolved when Curie tendered payments which were sufficient to reinstate the loan as of December 2013, which Huntington acknowledged by letter dated April 23, 2014. A true and accurate copy of the April 23, 2014 is attached as *Plaintiff's Exhibit B*.

20.     Almost immediately upon reinstatement, Huntington again alleged a balance due that included improper fees and charges, and which far exceeded the amount due under the plain language of the Note and Mortgage, alleging conflicting balances due ranging from $9,186.67 to $8,666.55. A true and accurate copy of he mortgage statements showing the conflicting balances are attached as *Plaintiff's Exhibit C*.

21.     Huntington filed the third foreclosure action, Case No. 2015-CV-00488, on August 31, 2015 (the "Foreclosure"). A printout of the docket for the Foreclosure is attached as *Plaintiff's Exhibit D*.

22.     On May 24, 2017, Curie and Huntington agreed to resolve the Foreclosure, with Curie making a payment of $15,000.00, and Huntington agreeing that $13,671.54 would be the remaining amount due to reinstate the Loan. Huntington agreed to extend a streamlined modification offer, with the remaining $13,671.54 added to the principal balance of the reamortized and modified loan (the "Settlement"). A true and accurate copy of the Settlement describe within the Agreed Judgment Entry is attached as *Plaintiff's Exhibit E*.

23.     On or about June 16, 2017, Curie tendered the $15,000.00 to Huntington via certified funds. A true and accurate copy of the payment is attached as *Plaintiff's Exhibit F*.

24.     Subsequently Attorney Eric Deighton of Carlisle, McNellie, Rini, Kramer and Ulrich Co., L.P.A. , counsel for Huntington in the Foreclosure ("Foreclosure Counsel"), notified

4

Curie that Huntington lost his $15,000.00 payment, and requested a replacement payment from Curie.

25.     On or about August 8, 2017, Curie submitted the replacement payment to Huntington via certified mail. Huntington received the replacement payment on August 18, 2017.

26.     On or about September 8, 2017, Huntington applied $13,500.00 of the agreed reinstatement to the suspense account and the remaining $1,500.00 to the Loan. A true and accurate copy of the mortgage statement reflecting this transaction is attached as *Plaintiff's Exhibit G.*

27.     On September 28, 2017, Foreclosure Counsel filed a motion to vacate the judgement due to Curie paying the agreed reinstatement amount. A true and accurate copy of this motion is attached as *Plaintiff's Exhibit H.*

28.     On or about January 26, 2018, Huntington sent Curie a trial plan offer pursuant to the Settlement. A true and accurate copy of the January 26, 2018trial plan offer is attached as *Plaintiff's Exhibit I.*

**[Huntington's handling of the loss mitigation process for the Loan]**

29.     On September 19, 2016 Curie, by and through counsel, sent correspondence requesting that Huntington extend a streamlined modification offer, as required by the Servicing Guide published by FNMA, the owner of Curie's loan (the "Streamline Request"). A true and accurate copy of the Streamline Request is attached as *Plaintiff's Exhibit J.*

30.     On or about December 29, 2016, Curie, by and through counsel, submitted a loss mitigation application to Huntington (the "Application") via facsimile transmission to

Huntington at 614-480-6602. A true and accurate copy of the cover page for the Application, outlining the submitted documents constituting the Application, is attached as *Plaintiff's Exhibit K.*

31.     On or about January 27, 2017, Huntington sent correspondence stating that Curie had been approved for a Trial Period Plan. A true and accurate copy of the January 27, 2017 correspondence is attached as *Plaintiff's Exhibit L.* The January 27, 2017 correspondence did not specifically mention whether Huntington had reviewed Curie for the Home Affordable Modification Program ("HAMP"). See *Id.*

32.     On or about February 8, 2018, Huntington sent correspondence stating that Curie had been denied for a modification under HAMP (the "Denial"). A true and accurate copy of the Denial is attached as *Plaintiff's Exhibit M.*

33.     On February 22, 2017 Curie submitted a timely appeal of the Denial (the "Appeal"). A true and accurate copy of the Appeal is attached as *Plaintiff's Exhibit N.*

34.     At the time of drafting the instant Complaint, Huntington has yet to review and provide Curie with a response to the Appeal as required by 12 C.F.R. § 1024.41(h).

**[Notices of error sent to Huntington]**

35.     While the Foreclosure was pending, Curie, through counsel, submitted multiple notices of error pursuant to his rights under 12 C.F.R. § 1024.35.

36.     Curie submitted a Notice of Error dated January 19, 2017 ("NOE #1") to Huntington asserting the following errors in the servicing of the Loan: that Huntington imposed improper fees on thirty-one (31) individual occasions; that Huntington failed to apply three payments in violation of 12 C.F.R. § 1026.36(c)(1); that Huntington's failure to extend a

streamlined modification offer within 90-105 days of Curie's default was in contravention to FNMA guidelines; and, that Huntington failed to respond to Curie's letter of September 19, 2016. A true and accurate copy of NOE #1 is attached as *Plaintiff's Exhibit O.*

37.     Plaintiff sent NOE #1 to Huntington at its self-designated address for receipt of notices of error pursuant to 12 C.F.R. § 1024.35(c) (the "Designated Address"). See *Id.*

38.     Huntington received NOE #1 at the Designated Address on January 23, 2017. A copy of tracking information for NOE #1 is attached as *Plaintiff's Exhibit P.*

39.     On or about March 8, 2017, Huntington sent correspondence to Plaintiff in response to NOE #1 ("NOE Response #1"). A copy of NOE Response #1 is attached as *Plaintiff's Exhibit Q.*

40.     NOE Response #1 stated that

> Our research also found that at the time Huntington received payment on December 10, 2014 the referenced account was past due. Consequently, funds were placed in a suspense account to be reviewed to determine if the could be applied to the loan. We determined the payment could be applied to the loan and it was applied on December 11, 2014. Please know that by applying the payment effective December 11, 2014 no additional fees or interest was incurred. However, we have updated our records to reflect a payment effective date of December 10, 2014 rather than December 11, 2014.

> ...Huntington has no records of sending a demand letter on the date referenced in your correspondence. However we confirmed that a payoff letter was sent on April 16, 2014 that indicate a total amount of $6,818.00 in recoverable advance fees.

> According to the information we have on file, Huntington imposed thirteen (13) individual charges from February 14, 2014 through March 26, 2014. We have concluded these fees are valid attorney fees and litigation costs…

> As a result of our review we have concluded that the referenced fees are valid. Consequently, we are respectfully declining your request for compensation with regards to the alleged errors…

See *Id*.

41.     On August 8, 2017, Curie sent a Notice of Error ("NOE #2"), alleging three (3) errors in the servicing of the Loan: (1) Huntington's loss of his $15,000.00 check; (2) the failure to apply that lost check to the balance of the Loan; and, (3) the failure to honor the terms of the Settlement. A true and accurate copy of NOE #2 is attached as *Plaintiff's Exhibit R*.

42.     Plaintiff sent NOE #2 to Huntington at the Designated Address. See *Id*.

43.     Huntington received NOE #2 at the Designated Address on August 18, 2017. A copy of tracking information for NOE #2 is attached as *Plaintiff's Exhibit S*.

44.     On or about September 28, 2017, Huntington sent correspondence to Plaintiff in response to NOE #2 ("NOE Response #2"). A copy of NOE Response #2 is attached as *Plaintiff's Exhibit T*.

45.     NOE Response #2 stated that

> Our records indicate that as of June 20, 2017 Carlisle Law who is representing us had received the $15,000 check per the settlement agreement dated May 24, 2017. The cecl was then forward (sic) to Huntington National bank (sic). The check was misplaced by Huntington, so we made a request to have the check reissued in August. The office of Carlisle Law received the $15,000.00 check on August 25, 2017. Huntington received the check on August 29, 2017.
>
> The $15,000.00 check was chased September 8, 2017. Thosed funds were placed into a suspense on the loan, pending a new complete loss mitigation packet also known as a Home Save packet. A Home Saver packet was provided to your office on or around September 11, 2017. As of the date of this letter we have not received a new complete a [sic] Home Save packet…

8

> Though that Agreed Judgment Entry states "Plaintiff will move this court to vacate this judgment and dismiss this case and offer Defendant a trial payment plan leading to a loan modification agreement which capitalized the remaining arrearage of $13,671.54." Per Fannie Mae requirements a homeowner must submit a current application for review, in order to be reviewed for a workout (federal government requirements).
>
> A request was made on September 27, 2017 to Carlisle Law to vacate the judgment entry of foreclosure and dismiss the case…
>
> At this time we are unable to reinstate the loan and/or extend loan modification, because we do not have a full and complete loss mitigation packet also known as a Home Save packet…

See *Id*.

46.     On December 13, 2017, Curie submitted another Notice of Error to Huntington ("NOE #3") alleging three (3) more errors in the servicing of the Loan: (1) That Huntington failed to properly respond to Curie's timely appeal of the Denial; (2) that Huntington failed to properly investigate and respond to NOE #1; and, (3) that Huntington's failure to extend a timely streamlined modification offer or HAMP modification was a failure to provide accurate information regarding loss mitigation as required by 12 C.F.R. § 1024.39. A true and accurate copy of NOE #3 is attached as *Plaintiff's Exhibit U*.

47.     Plaintiff sent NOE #3 to Huntington at the Designated Address. See *Id*.

48.     Huntington received NOE #3 at the Designated Address on December 18, 2017. A copy of tracking information for NOE #3 is attached as *Plaintiff's Exhibit V*.

49.     On or about February 1, 2018, Huntington sent correspondence to Plaintiff in response to NOE #3 ("NOE Response #3"). A copy of NOE Response #3 is attached as *Plaintiff's Exhibit W*.

50.      Huntington, through NOE Response # 3, failed to reference the fact that the February 8, 2017 denial letter allowed Curie to appeal the Denial by February 22, 2018. See *Id.*

51.     Additionally, Huntington, through NOE Response #3, failed to reference the fact that Huntington has not responded to Curie's timely appeal of the Denial. See *Plaintiff's Exhibit W.*

52.     To date, Huntington has failed to fully and properly respond to NOE #1, NOE #2, and NOE #3 (collectively, the "NOEs") by either correcting the errors asserted through each of the NOEs or by performing a reasonable investigation into such errors prior to sending written notice to Plaintiff stating that no errors occurred.

## DAMAGES TO CURIE

53.     Huntington improperly assessed fees and demanded payments which were far in excess of any contractual amount due from Curie, leading directly to the three (3) prior foreclosure actions. As of the filing of this Complaint, Huntington has failed to reverse the improper charges.

54.     Huntington's failure to extend a timely streamline modification offer has effectively trapped Curie in a loan with an interest rate of 7.625%, a rate which was more than double the prevailing rates at the time the streamlined modification should have been offered.

55.     Huntington's failure to fully and properly respond to each of the NOEs by performing a reasonable investigation into the errors and subsequently fixing the errors has damaged Curie's credit rating prolonging an unnecessary and artificial default.

## HUNTINGTON'S PATTERN AND PRACTICE OF REGULATION X VIOLATIONS

56.     Huntington's actions are part of a pattern and practice of behavior in violation of Plaintiff's rights and in abdication and contravention of Huntington's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

57.     At the time of the filing of this Complaint, Huntington has had more than One Hundred Twenty Five (125) consumer complaints lodged against it nationally, specifically concerning the issues identified in the instant Complaint. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www .consumerfinance.gov/complaint database/).

58.     Plaintiffs have reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Huntington against other borrowers. In particular, Plaintiffs have reviewed the fifteen (15) consumer complaints attached hereto and identified as *Plaintiff's Group Exhibit X.* The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Huntington has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE: BREACH OF CONTRACT

### [Breach of Settlement Agreement]

59.     Curie restates and incorporates all of his statements and allegations contained in paragraphs 1 through 58, in their entirety, as if fully rewritten herein.

60.     On May 24, 2017, Curie and Huntington agreed to resolve the pending foreclosure action pursuant to the Settlement. The following terms were memorialized in an *Agreed Judgment in Rem* signed by counsel for Curie and Huntington:

a.     Curie was to remit funds in the amount of $15,000.00 to Huntington by June 24, 2017;

b.     Huntington, in turn, would vacate the judgment, dismiss the foreclosure and "offer Defendant a trial payment plan leading to a loan modification agreement which capitalizes the remaining arrearage of $13,671.54.

See *Plaintiff's Exhibit E.*

61.     The memorialization of the Agreement through the *Agreed Judgment in Rem* created an enforceable contract between Curie and Huntington. See *Id.*

62.     On or before June 16, 2017, Curie remitted certified funds in the amount of $15,000.00 to Huntington, via Foreclosure Counsel, in satisfaction of his obligations under the Settlement. See *Plaintiff's Exhibit F.*

63.     Foreclosure Counsel forwarded the $15,000.00 in certified funds to Huntington, but Huntington subsequently lost the funds. See *Plaintiff's Exhibit T.*

64.     Huntington cashed the cashier's check for $15,000.00 on or about September 8, 2017.

65.     Curie fully performed his obligations pursuant to the Settlement.

66.     Despite Curie's performance, Huntington breached the Settlement by failing to promptly offer a trial plan payment in accordance with the Settlement, instead forcing Curie to

unnecessarily and in contravention to the Settlement to submit a loss mitigation application further delaying Curie's relief from Huntington's wrongful actions. See *Id.*

67.     Curie suffered actual damages, including but not limited to, legal fees and expenses to retain counsel to prepare the NOE # 2 and NOE #3 and to ultimately prepare, file, and prosecute this case to remedy Huntington's wrongful conduct. Curie has suffered, and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress. See *Plaintiff's Exhibit R and Plaintiff's Exhibit U.*

68.     Curie is entitled to actual damages, reasonable attorneys' fees, and costs against Huntington.

### COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.41(h)

### [Failure to Respond to Timely Appeal of the Denial of HAMP]

69.     Curie restates and incorporates all of his statements and allegations contained in paragraphs 1 through 58, in their entirety, as if fully rewritten herein.

70.     12 C.F.R. § 1024.41(a) explicitly provides that "[a] borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA (12 U.S.C. §2605(f))".

71.     Comment 3 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.41(d) provides that the "[d]etermination not to offer a loan modification option constitutes a denial. A servicer's determination not to offer a borrower a loan modification available to the borrower constitutes a denial of the borrower for that loan modification option, notwithstanding whether a servicer offers a borrower a different loan modification option or other loss mitigation option."

72.     12 C.F.R. § 1024.41(h)(1) provides that "[i]f a servicer receives a complete loss mitigation application 90 days or more before a foreclosure sale or during the period set forth in paragraph (f) of this section, a servicer shall permit a borrower to appeal the servicer's determination to deny a borrower's loss mitigation application for any trial or permanent loan modification program available to the borrower."

73.     12 C.F.R. § 1024.41(h)(4) provides that "[w]ithin 30 days of a borrower making an appeal, the servicer shall provide a notice to the borrower stating the servicer's determination of whether the servicer will offer the borrower a loss mitigation option based upon the appeal".

74.     On or about February 8, 2017, Huntington sent the Denial to Curie. See *Plaintiff's Exhibit M.*

75.     The Denial specifically stated that Curie could appeal on or before February 22, 2018. See *Id.*

76.     Accordingly, on February 22, 2017, Curie submitted the Appeal to Huntington. See *Plaintiff's Exhibit N.*

77.     Within thirty (30) days of February 22, 2017, that is on or before March 24, 2017, Huntington was required to send the written notice required by 12 C.F.R. § 1024.41(h)(4) to Curie.

78.     As of the date of filing this Complaint, Curie has not received a copy of the written notice required by 12 C.F.R. § 1024.41(h)(4).

79.     Huntington failed to send the written notice required by 12 C.F.R. § 1024.41(h)(4) to Curie on or before March 24, 2017. See *Plaintiff's Exhibit U.*

80.     Huntington's failure to timely provide a notice to Curie in response to the Appeal constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.41(h).

81.     Huntington's actions are part of a pattern and practice of behavior in conscious disregard for Curie's rights.

82.     Throughout this entire ordeal, Curie has simply wanted Huntington to conduct a review of his eligibility for all loss mitigation options available to him in an effort to save his Home via the best option available to him, to protect him from the risk of foreclosure, to responsibly resume his mortgage payments, and begin the lengthy process of rehabilitating his credit.

83.     But for Huntington's wrongful and willful actions in delaying the loss mitigation process by engaging in behavior that demonstrated a lack of reasonable diligence including Huntington's failure to respond to the Appeal, Curie's loss mitigation application would have been reviewed for loss mitigation options under HAMP which would have resulted in the Loan being modified with more favorable terms including a lower interest rate and shorter term in comparison to the modification offers he ultimately received from Huntington.

84.     Huntington's actions have caused Curie damage, as discussed *supra*. As a direct and proximate result, Curie has had to incur legal fees to retain counsel to ultimately to prepare, file, and prosecute this case to remedy Huntington's wrongful conduct. Curie has suffered, and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress. In addition, Curie will be paying a filing fee in order to initiate this action.

15

## COUNT THREE: VIOLATIONS OF 12 C.F.R. § 1024.35

**[Failure to Perform a Reasonable Investigation of and Properly Respond to the NOE #1 Alleging Thirty-Five (35) Separate Servicing Errors]**

85.     Curie restates and incorporates all of his statements and allegations contained in paragraphs 1 through 58, in their entirety, as if fully rewritten herein.

86.     12 C.F.R. § 1024.35(a) provides:

> A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

87.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

88.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or:

> Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

89.     Curie submitted NOE #1 to Huntington, dated January 19, 2017, asserting the following errors in the servicing of the Loan: Huntington imposed improper fees upon the Loan

on  thirty-one (31) individual occasions; that Huntington failed to apply three payments in violation of 12 C.F.R. § 1026.36(c)(1); Huntington failed to extend a streamlined modification offer within 90-105 days of Curie's default in contravention to FNMA guidelines; and, Huntington failed to fully and properly respond to Curie's letter of September 19, 2016. *Exhibit O.*

90.    NOE # 1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Id.*

91.    Curie sent NOE #1 to Huntington at the Designated Address. . See *Plaintiff's Exhibit O.*

92.    Curie alleged by and through NOE #1 that Huntington committed thirty-five (35) clear and distinct errors in the servicing of Curie's loan. See *Id.*

93.    Huntington received delivery of NOE #1 at the Designated Address on January 23, 2017. See *Plaintiff's Exhibit P.*

94.    On or about March 8, 2017 Huntington sent the Response to NOE #1 to Curie. See *Plaintiff's Exhibit Q.*

95.    Huntington did not correct any of the alleged errors through the Response to NOE #1 and state the effective date of such corrections. See *Id.*

96.    Huntington failed to perform a reasonable investigation into each of the errors alleged by and through NOE #1. See *Plaintiff's Exhibits O and  Q.*

97.    Huntington's failure to reasonably investigate either of the errors alleged regarding the Streamline Request is evidenced by their repeated contention that it was a loss

mitigation application rather than a request for a loss mitigation option that requires no application to be submitted or reviewed. See *Id.*

98.     Huntington failed to reasonably investigate the errors alleged regarding improper fees because a reasonable investigation would have uncovered that the fees assessed from February 14, 2014 through March 27, 2014 were for foreclosure fees and litigation costs that were not charged until months after the Borrower had already reinstated the loan and the pending foreclosure should have already been dismissed. See *Plaintiff's Exhibits O and Q.*

99.     Once the Loan was brought current, there was no reasonable basis for Huntington to impose charges for any amounts other than principal, interest, and escrow. Any subsequent fees for delinquency were due solely to the pyramiding of fees that occurred after the attempts to improperly charge the Borrower for aforementioned litigation fees. See *Id.*

100.    Huntington's actions in failing to correct or otherwise perform a reasonable investigation into the errors alleged through NOE #1, and provide a proper written response to such, constitute a violation of 12 C.F.R. § 1024.35(e) for each of the errors in NOE #1 that Huntington failed to appropriately handle.

101.    Huntington's actions are a pattern and practice of behavior in conscious disregard for Curie's rights.

102.    Huntington's actions have caused Curie damage, as discussed, *supra*. As a direct and proximate result, Curie has had to incur legal fees to retain counsel to ultimately to prepare, file, and prosecute this case to remedy Huntington's wrongful conduct. Curie has suffered, and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

103.    As a result of Huntington's actions, Huntington is liable to Curie for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT FOUR: VIOLATIONS OF 12 C.F.R. § 1024.35

**[Failure to Perform a Reasonable Investigation of and Properly Respond to NOE #2 Alleging Three (3) Separate Servicing Errors]**

104.    Curie restates and incorporates all of his statements and allegations contained in paragraphs 1 through 58, in their entirety, as if fully rewritten herein.

105.    On August 8, 2017, Curie sent NOE #2, alleging three (3) errors in the servicing of the Loan: (1) Huntington lost Curie's $15,000.00 check; (2) Huntington failed to apply that lost check to the balance of the Loan; and, (3) Huntington failed to honor the terms of the Settlement. See *Plaintiff's Exhibit R*.

106.    NOE #2 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Id*.

107.    Curie sent NOE #2 to Huntington at the Designated Address. See *Plaintiff's Exhibit R*.

108.    Curie alleged by and through NOE #2 that Huntington committed three (3) clear and distinct errors in the servicing of Curie's loan. See *Id.*

109.    Huntington received delivery of NOE #2 at the Designated Address on August 18, 2017. See *Plaintiff's Exhibit S*.

110.    On or about September 28, 2017 Huntington sent the Response to NOE #2 to Curie. See *Plaintiff's Exhibit T*.

111.    Huntington did not state in the Response to NOE #2 whether or not any of the errors alleged by and through NOE #2 occurred. See *Plaintiff's Exhibits R and T.*

112.    Huntington did not correct the alleged errors through Response to NOE #2 and provide the effective date of the correction. See *Id.*

113.    Huntington failed to perform a reasonable investigation into each of the errors alleged by and through NOE #2. See *Plaintiff's Exhibits R and T.*

114.    A reasonable investigation into the errors alleged through NOE #2 would have determined that the plain language of Judge Yost's Order formalizing the Settlement stated that upon Curie's remittal of $15,000.00 to Huntington, that Huntington "will...offer [Curie] a trial payment plan leading to a loan modification agreement" and not that Huntington would review a loss mitigation application as claimed by Huntington. See *Plaintiff's Exhibits E, R, and T.*

115.    Huntington's actions in failing to correct or otherwise perform a reasonable investigation into the errors alleged through NOE #2, and provide a proper written response to such, constitute a violation of 12 C.F.R. § 1024.35(e) for each of the errors in NOE #2 that Huntington failed to appropriately handle.

116.    Huntington's actions are a pattern and practice of behavior in conscious disregard for Curie's rights.

117.    Huntington's actions have caused Curie damage, as discussed, *supra*. As a direct and proximate result, Curie has had to incur legal fees to retain counsel to ultimately to prepare, file, and prosecute this case to remedy Huntington's wrongful conduct. Curie has suffered, and continues to suffer, significant damages including other legal expenses, other economic loss, as well as anxiety, loss of sleep, and emotional and mental distress.

118.    As a result of Huntington's actions, Huntington is liable to Curie for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT FIVE: VIOLATIONS OF 12 C.F.R. § 1024.35

**[Failure to Perform a Reasonable Investigation of and Properly Respond to NOE #3 Alleging Three (3) Separate Servicing Errors]**

119.    Curie restates and incorporates all of his statements and allegations contained in paragraphs 1 through 58, in their entirety, as if fully rewritten herein.

120.    Curie sent NOE #3 to Huntington on December 13, 2017 alleging three (3) more errors in the servicing of the Loan: (1) That Huntington failed to properly respond to Curie's timely appeal of the denial of his HAMP modification; (2) that Huntington failed to properly investigate and respond to NOE #1; and, (3) that Huntington's failure to extend a timely streamlined modification offer or HAMP modification was a failure to provide accurate information regarding loss mitigation as required by 12 C.F.R. 1024.39. See *Plaintiff's Exhibit U.*

121.    NOE # 3 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). See *Id.*

122.    Curie sent NOE #3 to Huntington at the Designated Address. See *Plaintiff's Exhibit U.*

123.    Huntington received delivery of NOE #3 at the Designated Address on December 18, 2017. See *Plaintiff's Exhibit V.*

124.    On or about February 1, 2018 Huntington sent the Response to NOE #3. See *Plaintiff's Exhibit W.*

125. Huntington did not state in Response to NOE #3 whether or not any of the errors alleged by and through NOE #3 occurred. See *Plaintiff's Exhibits U and W.*

126. Huntington did not correct the alleged errors through Response to NOE #3 and provide the effective date of the correction. See *Id.*

127. Huntington failed to perform a reasonable investigation into each of the errors alleged by and through NOE #3. See *Plaintiff's Exhibits U and W.*

128. It is clear that Huntington did not perform a reasonable investigation into the errors related to a potential streamline modification and a violation of 12 C.F.R. § 1024.39 as Huntington did not even make a mention of any such issue only talking about a review of an application for a standard modification which is an entirely different issue. See *Id.*

129. Huntington did not perform a reasonable investigation into the alleged error that they improperly failed to review Curie's timely appeal of the denial of HAMP because Huntington fails to mention that the proof submitted with NOE #3 shows that the denial of HAMP was sent to Curie on or about February 8, 2017 and specifically stated that Curie was able to appeal the denial by February 22, 2017. See *Plaintiff's Exhibits U and W.*

130. Huntington's actions in failing to correct or otherwise perform a reasonable investigation into the errors alleged through NOE #3, and provide a proper written response to such, constitute a violation of 12 C.F.R. § 1024.35(e) for each of the errors in NOE #3 that Huntington failed to appropriately handle.

131. Huntington's actions are a pattern and practice of behavior in conscious disregard for Curie's rights.

132.     As a result of Huntington's actions, Huntington is liable to Curie for actual damages, statutory damages, costs, and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Paul Curie prays for the entry of judgment in his favor and against Defendant Huntington National Bank, as follows:

A.     A finding that Huntington committed violations under 12 C.F.R. §§ 1024.35 and 1024.41 as alleged by and through Counts Two through Five;

B.     For statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each violation of 12 C.F.R. §§ 1024.35 and 1024.41, as alleged by and through Counts Two through Five;

C.     For statutory damages in the amount of Four Thousand Dollars ($4,000.00) as to each violation of 12 C.F.R. § 1026.36(c)(1), as alleged by and through Count Three;

D.     Awarding Curie actual damages and statutory damages in an amount to be determined at trial, but which is expected to exceed $84,000.00.

E.     Awarding Curie costs and reasonable attorneys' fees; and

F.     Granting such other and further relief as is just and proper.

Respectfully submitted:

*/s/ Marc E. Dann*
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
William C. Behrens (0093031)
DANNLAW
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536

notices@dannlaw.com
*Counsel for Plaintiff Paul Curie*

## **JURY DEMAND**

Plaintiff Paul Curie hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
William C. Behrens (0093031)
DannLaw
*Counsel for Plaintiff Paul Curie*